IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 JAN 31 PM 12: 16

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | **00-C-114-S** |
| **$10,000 IN UNITED STATES CURRENCY,** | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
JAN 31 2002

**MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**

This is a civil forfeiture action brought by the United States ("the government") under the Comprehensive Drug Abuse Prevention & Control Act of 1970, 21 U.S.C. § 881, which makes property traceable to the proceeds of illegal drug trafficking subject to forfeiture. 21 U.S.C. § 881 (a)(6). Defendant property, $10,000 in United States currency (the "currency") was seized from the possession of Claimant Wayne Rivers ("Rivers") on September 24, 1998 upon the government's suspicion and belief that the currency was intended to be used to purchase cocaine. Presently pending before the Court is the government's Motion for Summary Judgment. Upon careful consideration of all submitted materials, the Court concludes that Plaintiff's motion is due to be GRANTED.



13

# I.

On September 23, 1998, Wayne Rivers ("Rivers") and Anthony Reliford ("Reliford") arrived at the Birmingham airport and purchased, with cash, tickets for a flight leaving for Houston, Texas just ten minutes later. Rivers checked one bag, but the bag did not make it onto the flight due to the late check-in.

Believing the circumstances to be suspicious, a Southwest employee contacted the Birmingham Police Department Narcotics Unit ("BPD") and requested that they check Rivers' bag. When the BPD dogs sniffed the bag and indicated positively for the presence of controlled substances, Southwest Supervisor Myra Kitchen opened the bag in the BPD's presence and found that it contained exactly $10,000 in U.S. currency. BPD took custody of the bag and later discovered that it also contained a small amount of marijuana. Intelligence information indicated that Rivers was scheduled to return to Birmingham on September 24, 1998. Plans were made to meet Rivers when he returned to Birmingham to question him about the marijuana and the currency.

On September 24, 1998, the BPD received information from the New Orleans Airport Interdiction Unit that a possible drug courier was in flight to Birmingham from Houston with a connecting flight in New Orleans on a Southwest flight, and that this person was traveling under the name Reliford. Plans were made for members of the BPD and the Birmingham Resident Office of DEA to meet Reliford when he arrived. At approximately 9:30 a.m., Task Force Agent ("TFA") Alan Treadaway observed a person matching Reliford's description exit the flight. TFA Treadway and BPD Det. Williams approached Reliford and identified themselves. Reliford

agreed to talk to the officers and agreed to a "pat-down" search of his person. TFA Treadaway conducted the search and felt a large block object in Reliford's groin area under Reliford's pants. Based on his training and experience, TFA Treadaway believed that the block contained a controlled substance. TFA Treadaway removed the block, confirmed its appearance as a package that likely contained illegal narcotics, and brought Reliford to the BPD Interdiction Office for further investigation. At the office, TFA Jerry Wiley conducted a field test on the substance; the test indicated positive for cocaine. Subsequent DEA South Central Laboratory analysis confirmed the substance as cocaine HCI, weighing 512.3 grams.

Reliford was placed under arrest and advised of his constitutional rights. After acknowledging that he understood his rights, Reliford agreed to answer questions. Reliford stated that he was traveling with Rivers on September 23, 1998 to Houston to meet a Hispanic male named Chico. Chico drove the two to several locations in the Houston area and then returned them to the Airport Ramada Inn. According to Reliford, after arriving at the Inn, Rivers produced a block of cocaine and instructed Reliford on how to conceal it on his person for the return flight to Birmingham. Rivers instructed Reliford to return to Birmingham with the cocaine and that he would be returning with another similar block on a later flight. Reliford also stated that Rivers had been concerned that his bag had not arrived in Houston.

Plans were then made to meet Rivers as he arrived in Birmingham. At approximately 2:30 p.m. TFA Treadaway observed Rivers exit the flight. TFA Treadaway approached Rivers, identified himself, and asked him if he would answer some questions. Rivers consented to a "pat down" search, and TFA Treadaway discovered a block in River's groin area. TF Treadaway removed the block and noticed it was packaged identically to that block found on Reliford.

Rivers was taken to the BPD Airport Interdiction Unit, where a field test postively indicated the substance as cocaine. The DEA South Central Laboratory analysis confirmed the substance as cocaine HCO, weighing 464.2 grams. Rivers was placed under arrest and declined to make any statements at that time.

On September 28, 1998, Rivers gave a statement to TFA Wiley. Rivers stated that he and Reliford obtained the cocaine in Houston, Texas for an individual in Birmingham whom he knows as "Fat Boy." Rivers also stated that the money found in his bag was his and had been obtained as part of a $25,000 settlement award in a lawsuit he had brought against Shoney's. Rivers alleged that he was taking the money with him to Texas because he did not trust banks and felt that the currency was safer with him than with the bank.

Based on this statement, agents obtained bank records via subpoena from America's First Credit Union ("America's First"). The records indicated that Rivers maintained an active checking account at the institution. The account had a balance of $2425.70 as of July 1, 1998. On August 13, 1998, a deposit was made in the amount of 7043.81. At the time that Rivers made the trip to Houston, the account had a balance of $9439.60.

On October 23, 1998, a federal grand jury indicted Rivers and Reliford for violations of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(ii) and 846. On December 15, 1998, Rivers signed a plea agreement with the United States of America, wherein Rivers agreed to the factual basis outlined above, and agreed to plead guilty to Counts One and Two of the indictment. (X2 Pl. Br.) On April 5, 1999, Judge Nelson sentenced Rivers to a term of sixty (6) months.

II.

Title 21, United States Code, Section 881(a)(6) deems forfeited to the government [1]:

> [a]ll moneys...furnished or intended to be furnished by any person in exchange for a controlled substance in violation of [the federal narcotics laws], all proceeds traceable to such an exchange, and all moneys...used or intended to be used to facilitate any violation [of those laws].

21 U.S.C. §881(a)(6).

The standard for granting summary judgment in a civil forfeiture action is well settled in the Eleventh Circuit and was stated most clearly in United States v. Four Parcels of Real Property, 941 F. 2d 1429, 1439 (11th Cir. 1991)(en banc):

> Accordingly, when the government moves for summary judgment in a Section 881 civil forfeiture action, the court must first determine whether, as a matter of law, the government has shown probable cause for forfeiture. If not, summary judgment for the government is improper. See United States v. Twenty (20) Cashier's Checks, Having the Aggregate Value of Two Hundred Thousand ($2000,000) Dollars in U.S. Currency, 897 F. 2d 1567, 1570 (11th Cir. 1990)(per curiam)[omitted]. If so, the court then determines whether claimant can show, by a preponderance of the evidence, whether the property is a forfeit. The court, in deciding this issue on summary judgment, first must determine whether the government has met its "initial responsibility" of demonstrating the absence of a genuine issue of material fact–that is, taking all the evidence in the light most favorable to the claimant, has the government shown that no reasonable jury could award the property to the claimant? The government because it does not bear the burden of proof on the issue, may meet this burden by either pointing out to the court specific portions of the record that it believes demonstrate that the claimant cannot show by a preponderance of the evidence that he is entitled to the property, [citation omitted], or by introducing affirmative evidence negating claimant's case. If it meets this burden, and the claimant, in response, fails to introduce significant, credible evidence sufficient to show that a reasonable jury could find,

---

[1] Although the claimant refers to the Civil Asset Forfeiture Reform Act of 2000 (CAFRA) several times in his brief, Plaintiff correctly points out that the act is not applicable to the present case. CAFRA became effective on August 23, 2000 and applies to cases commenced on or after August 23, 2000.

by a preponderance of the evidence, that the claimant is entitled to the property, the government is entitled to summary judgment; the nonmoving party has failed to "make sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323, 106 S.Ct. at 2552.

III.

The government has met its burden of establishing that it had probable cause to seize said currency. Probable cause is a question of law, United States v. $364,960.00, 661 F. 2d 319, 323 (5th Cir. 1981), and requires that there be reasonable grounds to believe that there is a substantial connection between the property an some illegal activity. United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Boulevard, Ft. Lauderdale, 803 F. 2d 625, 628 (11th Cir. 1986). See also United States v. Route 2, Box 472, 136 Acres More or Less, 60 F. 3d 1523, 1526 (11th Cir. 1995). Probable cause in this context is something more than mere suspicion but less than prima facie proof. See United States v. $121,100.00 in U.S. Currency, 999 F. 2d 1503, 1506 (11th Cir. 1993). Probable cause may be based solely on circumstantial evidence, and may include information learned after the seizure. United States v. $41,205.00, 802 F. 2d 1339, 1343 (11th Cir. 1986). Additionally, hearsay is admissible to establish probable cause. United States v. One Parcel of Real Estate at 1012 Germantown Road, 963 F. 2d 1496, 1501 (11th Cir. 1992).

It is undisputed that the currency in question was intended to accompany Rivers to Houston. Plaintiff has established by pleadings, the affidavit of TFA Wiley, and Rivers' own statement pursuant to plea agreement, that the purpose of Rivers' visit to Houston was to purchase cocaine and carry it back to Birmingham. The government's inference that Rivers

intended to use the money is a reasonable one.

Rivers has not alleged facts sufficient to rebut the government's showing and establish that the currency is not subject to forfeiture. Rivers has pointed to a legitimate potential source for the currency–he had obtained $25,000 some years earlier in a settlement in a lawsuit against Shoney's. Rivers has not, however, proffered any legitimate explanation for the presence of the money in the suitcase intended for Houston. Rivers' claim that he distrusts banks and believed his money was safer in his bag than in the bank is hardly reasonable in light of the fact that Rivers had over nine-thousand dollars in a savings account at America's First at the time of the trip. Even if the Courts accepts that Rivers' currency was obtained through a legitimate source, Rivers has offered no evidence to rebut the inference that the $10,000 was intended to be used to purchase drugs once it arrived in Houston.

Given this failure of proof, and the high burden the Eleventh Circuit has set for claimants in forfeiture actions, this Court has no choice but to grant summary judgement in favor of the United States.

Plaintiff's Motion for Summary Judgment will be granted by separate order.

DONE this the 31st day of January, 2002.

Chief United States District Judge
U. W. Clemon